The next case on for argument is Brown Media v. K&L Gates. Mr. Abrams, good morning. Good morning. May it please this honorable court. The district court dismissed this case based on race judicata at the pleading stage. The district court premised its conclusions on three bankruptcy court orders which were all entered on contested matters in the context of the underlying bankruptcy proceeding. There are three independent arguments for reversal in our papers, any one of which would justify this court reversing and remanding back to the district court. The common thread in all three arguments is that Brown Media never got a chance to prove their claims. What is the record evidence that Brown Media sought to contest the sale during the course of the bankruptcy proceedings? None. There is no evidence that it did that. No, they did not contest the sale. Is there any evidence in the record of the excuse that Brown Media has for not contesting the sale? Well, the reason that they didn't contest the sale, and this is in the record, and it's in the complaint, they attempted to do essentially a mitigating transaction. Brown Media did and successfully bid on a lesser group of assets, and the bank financing that they had for the sale that we believe they should have gotten ultimately fell through, and they were not able to close on the sale of this lesser group of assets. Let me put the question then, thank you, and add to the question or put a slightly different spin on it. Couldn't Brown Media have brought these allegations before the bankruptcy court during the course of the time that before the bankruptcy judge was the consideration for the approval of the sale? Couldn't Brown Media have interposed saying this is all a set up and sought the court which exercises equitable, sorry, which really serves in equity or is an equity court to consider all of these things in the course of deciding whether or not to approve the sale? No, we don't believe they could have. Why? Here's why. Sam Mitchell, and part of the allegations in the complaint is that there was an investment banker, Sam Mitchell, who Brown Media only heard about later who we believe will testify that the way the bids were calibrated were such that the defendants essentially used this foreclosure action, which ended up being illegal in violation of the automatic stay. They used this foreclosure action as a pretext to devalue Brown Media's bid. They didn't have access to Brown Media, excuse me, they didn't have, Brown Media didn't have access to Mr. Mitchell in the weeks where all of this was happening. The more important point, because the record is not, this was all at the pleading stage. If they want to raise Trudicata as an affirmative defense and make a factual showing that Brown Media knew everything at precisely the time that all of this happened, they can go ahead and do that. But that's something they have to do in the district court, and they have to put in some facts. Because raise Trudicata, except in the most extreme circumstances, is something that you raise as an affirmative defense, and if it can get resolved at all, it gets resolved on summary judgment. But the other thing is, they try to do a mitigating transaction. What other facts are needed? I mean, the court can take judicial notice, surely, of the bankruptcy proceedings. Those are judicial proceedings within the same district, right? Correct. So there's no question about that. The court can read everything that was in the bankruptcy file and make some determination with respect to that. Correct. What else is needed? Well, if we did not have the salient facts with which to bring this claim at the time, and we don't have to plead that we didn't have the salient facts. That's something that gets determined, affidavits, maybe a deposition. But if we did not have the salient facts at the time, that is something that gets dealt with. The facts concerning what had happened in connection with the foreclosure that then ultimately precluded the ability to get the financing. Correct. That would be something that we would show if they raised it as an affirmative defense. But even if we had every fact in the world, and I'm not saying we did. My position is we didn't. But even if we had every fact in the world, they made a business decision to try a mitigating transaction as opposed to fighting in the bankruptcy court. That doesn't mean that there's an identity of cause of action here. The sale orders- You're saying this case is more like Piper than Med-El Wood, which is what your adversary relies on. Correct. Maybe you could tell us why. Well, because in the Med-El Wood case, they were essentially trying to disturb the whole transaction. They were suing everybody involved in the transaction to get the whole thing blown up, in addition to seeking money damages. Here, we're suing essentially one entity and the partners of that entity, and what we're saying is we had a deal. Pre-petition, had nothing to do with bankruptcy when we had the deal, and that's exactly like Piper. There was a pre-acquisition deal to essentially work on a bid, and what ended up being an unsuccessful bid. One of the parties to the bid in Piper cut off the other party and went with somebody else and made a deal. In that sense, this is exactly like Piper. The only difference between this and Piper is the attorney-client relationship, and in the context in which we're talking, we would submit that that is a distinction without a difference. Right. So your position is your client is suing the law firm with which your client had a contractual relationship pre-petition about a breach of fiduciary duty with regard to that relationship, and he wants recompense from that firm, but in no way is trying to nullify the sale, and there was nothing implicitly or explicitly resolved in connection with the bankruptcy that had to be resolved with regard to your client's claims. Yes, that's exactly our position. There's also, I think, a jurisdictional competence issue as to whether the bankruptcy court could have awarded final relief, and I'd also note that- Final relief on the claim that you're bringing here? Correct. Correct. And I would also note that orders in contested matters under this court's Welton opinion, generally they do not preclude issues which require adversary proceedings, and that is essentially what we have here. All of these orders were in contested matters. The sales orders all had to do with the best interest of the creditors. There's nothing inconsistent about our position in not fighting these sale orders at the time. At the time, both of the sale orders were, to the best of our knowledge, in the interest of the creditors, and I see my time is dwindling, so unless you have more questions, I'll reserve for rebuttal. Thank you, Mr. Abramson. Thank you. You have reserved two minutes for rebuttal. Mr. Acampora. Good morning. May it please the Court. With me this morning is Brian Powers, his first time in this courtroom. Welcome, Mr. Powers. Your Honor, we heard a lot of argument, and some of it is not good, because the thing that rang in my mind and rang in Mr. Powers' notebook from the other side was- Is not good for you. It's not good for the other side. And that phrase is, we had a deal. The fact of the matter is that all the facts that are in their complaint were known to the plaintiffs at the time of the auction. The Huntington foreclosure was already pending. Its impact was already known, according to what they thought it was doing. The fact that they attended a 20-hour auction with counsel, Prior Cashman was their lawyer, in which- How do we know that based on the pleadings in this case? The record of the timing of the cases. The Huntington foreclosure begins in June of 2010. It's pending. The auction takes place on July 21, 2010. So they know the Huntington foreclosure is pending. They know they have a, quote, deal, an express promise, they allege, from K&L Gates to object to the Huntington foreclosure as a violation of the automatic stay. So they know going into the auction, that hasn't happened. They know at the auction, according to them, that various leases for the CRJ properties aren't being valued appropriately or being valued irrationally. That happens at the auction. They are at the auction. They know that the alleged confidential information is happening at the auction. So nothing happened after the auction. There was nothing that they learned. And to say you had a deal in the United States Bankruptcy Court would have severely changed the outcome of this case. Help me understand, because your client may well have defenses to the action that they're seeking to pursue, but I'm having difficulty understanding it as a res judicata matter. Doesn't it arise out of a different set of facts? So the operative facts before the Bankruptcy Court are the sale, the valuation of the assets, the running of the auction. But these claims arise out of a pre-petition arrangement that they're alleging and the law firm's breach of that arrangement. And it doesn't seem to me the Bankruptcy Court either explicitly or implicitly resolved any question with regard to those matters in any of the various orders. So what am I missing? Here's what you're missing, Your Honor. If you take the bankruptcy aspect of this case out of their complaint, they have nothing. The entire matter comes to fruition because there is, in fact, a bankruptcy auction. If all they do is they say they have some sort of agreement with K&L Gates while it was allegedly acting as their lawyer, and there's no evidence in the record that it was acting as the plaintiff's lawyers, if you take out, if you accept that as true, and you take out the bankruptcy aspect of this case, there's no claim. The breach occurs, the breach of this fiduciary duty, if any, occurs because the bankruptcy auction doesn't successfully get them the assets under the original asset purchase agreement. That's what this case is about. And if you reduce, and I could see where. But aren't they alleging in addition to this, and I'm sure Mr. Abrams can speak for himself, but aren't they alleging in addition to this that it was as a result of fraud or quasi-fraudulent activity on the part of the attorney? Yes, they are, and I'm glad you raised that point because I can see where Judge Spatt came from on the motion on the res judicata portion. Bankruptcy auctions are sacrosanct. Bankruptcy courts are fiercely protective of the process. They want to make sure they're fair, they're reasonable, they're non-collusive. And where we are, Your Honors, is collusion. So in order for you to dumb it down for the sake of argument, Bankruptcy Judge Eisenberg's sole concern was that the auction was accomplished on a level playing field. What Judge Spatt finds essentially is if they prove everything, they not only prove that the playing field wasn't level, and that's already been decided, they prove that the playing field was supposed to be tilted towards them. And that's certainly something Judge Eisenberg would have been concerned with had they raised that at the time of the auction. For a litigant to come in and say I had a deal with the debtor's lawyer that I was going to get these assets, this case would have ended very differently. She would have appointed a trustee. She would have disqualified this bidder. She would have disqualified K&L Gates. And there would have been an investigation by the United States Trustee's Office because you can't collude in a bankruptcy auction. And when you look at the tenor of their complaint, it's all about we had a deal. We had an agreement. It was supposed to go one way. And then we shift gears a little bit and they say when it didn't go exactly that way, we cut a different deal and we couldn't pay for it. And now K&L Gates is responsible for that. It doesn't hold together. So Judge Spatt looks at the situation and he says when you get down to the basics, what's the playing field level? You can never harmonize in Judge Spatt's mind. Judge Eisenberg's conclusion, specific conclusion, not in one order approving their sale on August 11th, but on four separate orders because you may recall from the record they defaulted on that transaction and the assets were sold to PNC Bank and then a small piece was sold to another buyer at the auction. There's four separate orders in which she finds the auction was conducted fairly with a reasonable opportunity for parties to bid and was in a non-collusive fashion. How do plaintiffs ever prove their case? Because when it comes down to it, they're proving some sort of collusion. Breach of fiduciary duty. We had some obligation that they never disclosed to Judge Eisenberg. Fraud, Your Honor. We perpetrated something where we led them to believe something that they never disclosed to Judge Eisenberg. Res judicata does not abide silence in activity. And they sat by quietly and the record shows they waited three years after the auction, actually a little bit more, to bring this action. If they suffered tens of millions of dollars worth of damage, where were they? And they had so many opportunities. They had sale confirmation hearings. They had fee approval orders for K&L Gates. They had plan confirmation hearings. Nothing. Nothing. Not a word. And I understand that there's this argument that they didn't have standing. Respectfully, that's just wrong. They were the stalking horse bidder. They had more standing than anybody else in the case. And as a matter of fact, they still have $765,000 in auction bid deposit sitting on account that they're arguing over. That Judge Eisenberg granted summary judgment on. So if the standard for having an interest is having a pecuniary interest, they claim they do. They claim they suffered tens of millions of dollars of damage and sat by quietly. The facts are the same, Your Honor. The common nucleus of operative facts is the bankruptcy process and the bankruptcy auction. Without it, there's really no case. And so Judge Spatt looks at that and says, I can never get. He's from, I guess he's from Vermont. He can't get there from Maine. He can't get there from here. A court can't find its way through the auction was conducted non-collusively to we had a deal. Now, there are a couple of other issues, unless the court has some questions for me, that I'd just like to address briefly. They contested this bankruptcy case, this auction. They appeared in no less than ten hearings. And they tried to cut a deal. And they tried to save their financing. And Judge Eisenberg issues an order around August 17th in connection with a finding that they didn't do anything to protect their rights. They didn't move to re-argue. They didn't file a notice of appeal. They didn't even ask, according to Judge Eisenberg, they didn't even ask for an adjournment. Yet they want to stand quietly saying, we had these facts in our pocket. We have a separate independent claim against K&L Gates. It's just not true. The question about Mr. Mitchell I don't want to get involved in too deeply. But you do recall that Mr. Brown is the president and CEO of the debtor. And if Mr. Mitchell was the debtor's investment banker, I'm pretty sure he had access to him as well. Your Honor, you asked about Piper. Piper is an interesting case. And what you miss in Mr. Abrams' explanation of it is that Piper involved two real non-debtors. Judge, you and I are going to buy the assets of Judge Garifuss' company. We're non-debtors. This is a claim involving the debtor's lawyer. This is not two parties that got together and decided to do a joint venture to purchase assets and it failed. Clearly the court doesn't have jurisdiction over that. But the court certainly had jurisdiction over the auction. And I think I see my time dwindling. What I'll close with is, had plaintiffs stood up at any time and mentioned any of these facts to Judge Eisenberg, this litigation wouldn't exist. Because she would have either addressed their issues and said, you have some viability and re-auction property. Or she would have said, these don't have any application. Had they gotten up and said that there was a deal, bad things would have happened. Unless the court has any further questions, I will take my leave. Thank you. Mr. Abrams, you've reserved two minutes for rebuttal. Maybe Mr. Akinpura misunderstood me or maybe he's being a clever lawyer. But the bottom line is, when I said we had a deal, they were my client's lawyer. It's not the deal that the auction was supposed to go one way or another. There's no allegation of collusion here. That is their word. That is their straw man characterization of the complaint. What the complaint alleges is that the law firm tilted the bidding in favor of their institutional bank clients and against Brown Media. That doesn't require collusion. The bank clients may not have even known it. We probably didn't. But a law firm preferring clients that actually have money and can continue to pay over clients that don't have money is neither particularly surprising. It certainly makes for a possible story and a plausible complaint. There's no allegation of collusion. And when counsel says he's pretty sure that my client could have talked to Mr. Mitchell, what he's pretty sure about doesn't matter. We are here on a complaint that was thrown out on the pleadings on a 12b-6. And let them go back to district court and make whatever, answer the complaint and make whatever arguments and affirmative defenses they want to make. And finally... To support the argument you are making to us, the best articulation of your claim in a sentence or two is... The substantive claim. Your substantive claim that got tossed by the district court. The one that you're saying was tossed, should not have been tossed on the pleadings. Okay, the... We are suing you, the attorney. Brown Media had an attorney-client relationship with K&L Gates. It was found after a three-day hearing with Judge Eisenberg. Attorney-client relationship. They drafted the Stalking Horse Agreement. They said they preferred the Stalking Horse Agreement. They didn't follow their sales procedures. And they used the pretext of this illegal foreclosure action, essentially, to value Brown Media's leases as being worth nothing. And they went ahead and made a deal that favored their bank clients. And that's why we're suing for breach of fiduciary duty, among other things. And this could not have been brought before the bankruptcy judge in the course of all these proceedings before Judge Eisenberg? Well, that's correct. The bankruptcy court didn't have jurisdiction. My client tried to do a mitigating transaction rather than fight and object over everything. But even if they did bring it, the bankruptcy court would not have had jurisdiction. It would have needed to be, you know, judge trust. And they would not even consent to bankruptcy jurisdiction. And that's why we ended up in district court. Thank you. Thank you both for a reserved decision. Thank you.